## CEPHAS HAMMOND v. STATE.

1. CRIMINAL LAW. *Indictment. Incompetent testimony before grand jury.*

   An indictment should not be quashed because the grand jury heard incompetent testimony.

2. SAME. *Grand jurors as witnesses.*

   Grand jurors are incompetent witnesses to prove upon what evidence an indictment was found.

3. SAME. *Reasonable doubt. Instruction. Conscientious belief.*

   The word "conscientiously" is a word of quality and not of quantity, and ought not to be used in charges as to a reasonable doubt, but if the charge be that the jury, before convicting, must take into consideration all the evidence and "conscientiously" believe, beyond a reasonable doubt, defendant guilty, the word is mere surplusage.

4. SAME. *Good character.*

   The influence of evidence showing the good character of defendant should be left to the jury, and the court should not instruct that it is, or is not, sufficient to raise a reasonable doubt of guilt.

FROM the circuit court, first district, of Panola county.

HON. EUGENE JOHNSON, Judge.

Cephas Hammond was indicted by the grand jury of the first district of Panola county, in March, 1896, for the murder of his stepson, an infant about two years of age. The indictment was adjudged defective and a second one was found. The defendant moved the court to quash the second indictment, because his wife, the mother of the child, had testified to material facts against him before the grand jury and the indictment was found upon her testimony. On the hearing of the motion several members of the grand jury were introduced as witnesses by the defendant without objection by the state. The motion was sustained, and the second indictment (No. 986) was quashed.

The state excepted to the ruling and appealed therefrom.   The grand jury still being in session, a third indictment was found against Hammond charging him with the same offense.   He was tried upon the last indictment, convicted, and sentenced to the penitentiary for life, and appealed.   The testimony against him was almost wholly circumstantial.   The instruction given for the state, passed upon in the opinion of the court, is in these words: "The court instructs the jury for the state that you are not required to know that defendant inflicted wounds on the child by violence, nor is it necessary for you to know that the child died from such wounds.   All that is required is for you to take into consideration all the facts and circum-stances in evidence and from them to conscientiously believe beyond a reasonable doubt that he made wounds on the child from which it died."

*W. D. Miller*, for appellant, Hammond.

The evidence in this case against the accused is wholly cir-cumstantial, and falls very far short of that standard or degree of proof absolutely essential to conviction under the well-estab-lished and familiar rules in such cases.   There was no proof whatever that the accused inflicted the alleged wounds upon the child, or, even if he did, that these wounds produced the death.   There was no proof as to the cause of the death.   The alleged threats of the accused against the child, as well as the mother, if made by him at all, were without any significance, under the circumstances, and appear to have been but idle, un-meaning assertions, made openly and publicly at times and places evincing no serious intention, but in real truth exclud-ing the idea of any purpose to execute them.

It was error to permit evidence to go to the jury even tend-ing to connect the accused with the alleged crime until the *corpus delicti* was established by full, clear, and unequivocal proof beyond a reasonable doubt.   "In cases of felonious homicide the *corpus delicti* consists of two fundamental and

necessary facts; first, the death, and second, that it was caused by criminal agency." *Pitts' case,* 43 Miss., 472; *Sam's case,* 4 Geo. (Miss.), 347; *Stringfellow's case,* 4 Cushman (Miss.), 157. *Corpus delicti* is made up of two elements: First, of the fact that a certain result has been produced; second, of the fact that some one is criminally responsible for the result." 4 Am. & Eng. Enc. L., 309. " Circumstances to show *corpus delicti* and then to show defendant's guilt should be separately presented." 73 Am. Dec., 312; 48 Mich., 482; *State* v. *Flannagan,* 26 W. Va., 116. "Before presumptive evidence tending to connect prisoner with the crime can be invoked, the *corpus delicti* must be established clearly, unequivocally, and beyond a reasonable doubt." *Ryan* v. *Commonwealth,* Va. Ct. of App., 9 Va. L. J., 607.

The instruction given to the jury on behalf of the state was erroneous and misleading. (The instruction referred to is the one copied in the statement *supra.*)

Suppose Hammond did "make wounds on the child from which he died," that might even be true, and yet the accused not be guilty. Suppose they were made by the accused accidentally, or unintentionally, or not with any criminal intent, or not while engaged in any unlawful act, or the like, surely he would not be guilty of murder. The instruction is misleading throughout, from beginning to end, and absolutely excludes from the consideration of the jury any chance, casualty or accident by which he might have made the wounds on the child, and which might reduce the crime to manslaughter if it did not exonerate. See, as to this instruction, *Brown* v. *State,* 72 Miss., 95; *Burt* v. *State,* 72 Miss., 408; *Hemphill* v. *State,* 16 So. Rep., 491; *Johnson* v. *State,* 16 So. Rep., 494.

The court below erred in refusing the instruction asked for by the accused as to good character being sufficient to raise a doubt as to guilt. " Good character of a defendant is of itself a sufficient fact from which a reasonable doubt of guilt may arise. *People* v. *Kerr* (N. Y. Sup. Ct.), 6 N. Y. Sup., 674.

'' Evidence of good character must be considered in all cases when it is offered, as well when the other evidence is direct as when it is circumstantial.    Its weight is not confined to doubtful cases, but it may of itself create a doubt.    The degree of its force is to be estimated by the attending circumstances and not by the grade of the offense.'' ˙3 Am. & Eng. Enc. L., p. 111.    The accused was entitled to the protection which a good character often alone affords, especially in a case of circumstantial evidence, and he unquestionably had the right to have the jury so informed.

*Wiley N. Nash,* attorney-general, for the state.

*On the state's appeal:* Under our statute, this court is requested to pass upon the question raised in the record, whether an indictment should be quashed for the reason that the wife of the party indicted gave material testimony before the grand jury that found the bill; the statute provides that where an exception is presented in a case, by the state, the case shall be treated as if an appeal had been formally prosecuted by the state.    All questions of law, thus presented, shall be decided by the supreme court.    Code 1892, § 39.    The statute in regard to husband and wife testifying is code 1892, § 1739.    The following authorities hold that an indictment should not be held bad because the grand jury heard improper evidence: Thompson & Merriam on Juries, p. 693, sec. 642, and notes 1, 2, and 3, citing *State* v. *Walcott,* 21 Conn., 272, 280; *State* v. *Boyd,* 2 Hill (S. C.), 88; *State* v. *Tucker,* 20 Iowa, 508; *State* v. *Fassett,* 16 Conn., 457, 472; *Bloomer* v. *State,* 3 Sneed, 66; *People* v. *Shoug,* 1 Abb. Pr. (N. S.), 244; *Hope* v. *People,* 83 N. Y., 418; *State* v. *Logan,* 1 Nev., 509; *Turk* v. *State,* 7 Ohio (Part II.), 242; *People* v. *Briggs,* 60 How. Pr., 17; *Steele* v. *State,* 1 Tex., 142, 145.

*On defendant's appeal:* The whole case was fairly submitted to the jury both upon the law and the facts.    The court expressly stated to the jury in the first charge for appellant that

the *corpus delicti* in this case consisted of two essential facts—
the dead body, and that the death was caused by violence or
some criminal agency—and that the *corpus delicti* must, in such
cases, be established clearly, unequivocally, and beyond a rea-
sonable doubt, before any evidence can be considered connect-
ing the defendant with the crime. The assignment of error,
based upon the charge asked by appellant, and refused by the
court, is as follows: " Good character of a defendant is of itself
a sufficient fact from which a reasonable doubt of guilt may
arise," is not well taken. This is clearly an improper charge.
It is misleading, and calculated to give undue prominence to
the question of character in the trial of every criminal case.
In dealing with this subject, Wharton lays down the principle
correctly. He says substantially: " We believe the true rule to
be that the good character of the party accused, when satisfac-
torily established by competent witnesses, is an ingredient
which ought always to be submitted to the consideration of the
jury, together with the other facts and circumstances of the
case, . . . and the court should leave it to the jury to
form their own conclusions, upon the evidence, whether an in-
dividual whose character was previously unblemished, has or
not committed the particular crime for which he is called upon
to answer." 1 Wharton's Crim. Law (7th rev. ed.), sec. 648.

WHITFIELD, J., delivered the opinion of the court.

On the appeal of the state the question is presented as to the
propriety of the action of the court in quashing the second in-
dictment (No. 986 in the record) on the ground that the wife
of the accused testified to material matters before the grand
jury. And first we remark that the rule declared in this state
that no inquiry can be entertained the object of which is to
show that the indictment was found without the examination
of any sworn witnesses (*Smith & Covin* v. State, 61 Miss.,
754) would, in principle, exclude the inquiry here propounded.
Four of the cases cited in *Smith & Cavin* v. *State, supra,* to

wit: 24 Ind., 151; *United States* v. *Reed*, 2 Blatchford, 435; 2 Hill (S. C.), 288, and *State* v. *Dayton*, 3 Zab., 49, are cited by Mr. Bishop (1 Bish. Crim. Pro., sec. 872, p. 517, note 4) to sustain the proposition that "the doctrine appears to be general that the court cannot inquire into the sufficiency of the proof . . . to invalidate an indictment." And, in sec. 874, Mr. Bishop says: "The rule of evidence, familiar as to the petit jury, that the testimony of a juror will be received to sustain a verdict, but not to impeach it, applies also to the grand jury. So that the want of legal evidence to justify the finding of a bill . . . cannot be shown in this way, and no other is ordinarily practicable." Says Green, C. J., in *State* v. *Dayton, supra:* "If the position be sound that every indictment not found upon the production of legal and competent evidence before the grand jury is essentially vicious, it follows that, in all cases where the witnesses produced before the grand jury are, from any cause, legally disqualified or incompetent to testify, or when any essential link in the chain of testimony is sustained by testimony not in itself legal, the indictment cannot be sustained although there be ample competent testimony, not produced before the grand jury, to sustain the charges in the indictment." But no objection was made by the state to the testimony of the two grand jurors who were examined to overthrow the indictment. Pretermitting, however, the question as to whether the inquiry could be made, on motion to quash the indictment, the fair result of the testimony of the two witnesses is, that other competent testimony was heard by the grand jury to substantiate all that the wife testified to, and that the indictment would have been found regardless of her testimony. In this view the court erred in quashing the said indictment. 1 Bish. Crim. Pro., sec. 872.

Turning now to the appeal by the defendant, we have to repeat what we have often said, that "conscientiously" is a word of quality, and not of quantity, and ought not to be used in charges as to reasonable doubt. But in the charge complained

of here, it was mere surplusage; for the jury are not only told that they must "conscientiously" believe, but that they must "conscientiously believe beyond a reasonable doubt," etc. The expression that "he made wounds on the child, from which he died," must be read in the light of the testimony, and, so read, could not possibly have been understood by the jury as warranting conviction, though the wounds were unintentionally made.

It is urged that the court erred in refusing this charge: "Good character of a defendant is of itself a sufficient fact from which a reasonable doubt of guilt may arise." The court had already charged the jury that the good character of a defendant was a fact they should consider, in connection with all the evidence, in determining the guilt or innocence of the defendant. The charge was properly refused. This court said in *Coleman's case*, 59 Miss., 490: "Evidence of the good character of the accused should go to the jury as any other fact, and its influence in the determination of the case should be left to the jury, without any intimation from the court as to its value. The court should not tell the jury that satisfactory evidence of the good character of the accused is, or is not, sufficient to raise a reasonable doubt of his guilt."

In *Brown* v. *State*, 5 So. Rep., 626, a physician was called to prove that death was caused by the blows inflicted in the whipping of the child, but declined to so testify. Nothing of that sort occurred in this case.

The law was most abundantly and liberally charged for the defendant. We find no error, and the judgment is

*Affirmed.*