the jury in finding an express or implied design to kill deceased, and a joint participation in the killing.

5. CRIMINAL LAW. *Review. Credibility of witnesses.*

The supreme court does not on appeal pass upon the truth or falsity of testimony in any case where the testimony offered is such that a jury is reasonably warranted in believing it and acting upon it. The court will not to any extent usurp the province of the jury, who are the triers of. fact, and who with all the witnesses testifying in their presence, must necessarily be the best judges, and under the law are the final judges, of the truth or falsity of the ·testimony and the· weight to be given thereto.

APPEAL from the circuit court of Tippah county.

HON. C. LEE CRUM, Judge.

·Allen Spight was convicted of murder and appeals.. The facts are fully stated in the opinion of the court. ·

*Spight & Street,* for appellant.

The first assignment of error is the action of the court in overruling the objection of counsel for appellant to the testimony of George Garrett who was jointly indicted with the appellant.

In the latest case we have found where this court passed on this subject, the case of *Brown* v. *The State,* 108 Miss. 46, 66 So. 288, the question there was whether the objection of a co-defendant to testifying could be raised by his attorneys. The court said not, and Judge ·COOK, in delivering the opinion of the court used this language: "It was the duty of the court to have imformed the witness of his privilege, and to have left· it to the witnesses alone to waive or claim this protection afforded him by the constitution." This requirement of the law was fully met by the question from the trial judge, until he had received repeated statements ·from the witness that he did not desire to testify, and not until his fears were appealed to did he ever agree to testify.

Judge Cook, further said in the same opinion: "So far as the witnesses are concerned, there is nothing in the record to suggest that he was unwilling to testify. His lawyers were unwilling, but the witness himself said not a word." The case at bar is far different from that. Here the witnesses repeatedly refused to testify, and if he, "had been left alone to waive or claim this protection afforded by the constitution" his testimony would not have been heard. Error is assigned to the giving by the court of the third instruction for the state on the subject of conspiracy.

There is absolutely no evidence in the record to show any conspiracy or agreement between George Garrett and Allen Spight to kill Ira Short. If the testimony of George Garrett it true the killing occurred without any agreement between the two as to what should be done. This instruction left the jury to decide for themselves what it takes to constitute a criminal conspiracy and without any legal guide or definition with a negro on trial for killing a white man it was not difficult for the jury to construe almost any act as constituting a conspiracy to murder. This instruction should have plainly told the jury what is meant by a conspiracy and then left them to decide from a consideration of all the evidence whether a conspiracy had been established. This was not done and the result was in our opinion highly prejudicial to the defendant in the court below, the appellant here.

While we recognize the general reluctance of this court to set aside the verdict of a jury where the case has been submitted to them on proper instructions yet we feel sure that if this court should be convinced, after a consideration of all the evidence, that it is probable that an injustice has been done, the court will not allow a verdict to stand; especially one carrying a death penalty. Our conviction is that this is a case of that kind, and we shall endeavor to give the court our reasons for this conclusion.

The court will readily perceive that Allen Spight's conviction rests upon the testimony of George Garrett. By his own evidence he shows that he was an accomplice in the crime but throughout the entire course of his testimony he was seeking to mitigate his own connection with the case and fasten the chief responsibility upon his codefendant.

Looking at all the testimony and circumstances in the case, and making full allowance for our zeal and for every possible bias in favor of a client, we sincerely, conscientiously believe that the verdict of the jury in this case ought not to be upheld.

"Pity 'tis, 'tis true." Our every-day observation teaches us that it is no difficult undertaking to convict a negro before an average jury in this county when charged with killing a white man. It will be remembered also, as shown by the record, that a little more than a month after this killing this trial occurred. Naturally the finding of a dead body after a disappearance of eight days, the horrible condition in which it was found, and the fact that two negroes were charged as the guilty agents, public sentiment was highly inflamed, and a sacrifice was demanded. This trial presented the first opportunity to visit wrath upon somebody, and there was no disposition evidently on the part of this jury to take any chances on letting a man charged with the crime escape.

If the testimony of Allen Spight and his wife is true, the appellant is guilty only as an accessory after the fact, and not of that crime unless we eliminate entirely his statement that it was through fear alone of George Garrett that he aided him in removing the body. This feature of the case was presented to the jury by instruction No. 13. This view of the case, however, would not have satisfied the demand for vengeance, and doubtless received no consideration at the hands of the jury.

We think reversible error was committed as argued by us in the first part of this brief on the law of the

case, and for the 'reasons there assigned we respectfully
submit that the case ought to be reversed.  If, however,
the court should not take this view of it we earnestly
contend that the case ought to be reversed on the facts
as not being sufficient to support this verdict bearing
the death penalty.

As stated before, we recognize the inherent difficulties
which confront us when we ask the court to reverse the
case and set aside the verdict of the jury on the facts,
but we know that if, we have been able to convince the
court that a judicial murder is about to be committed
there will not be any hesitation on the part of the court
to save the life of this unfortunate negro and give him
another chance on a trial free from some of the sur-
roundings attending the former trial.

*Earl N. Floyd* and *A. W. Dent,* assistant Attorney-
Generals, for the state.

The first assignment of error relates to the action of
the court in permitting George Garrett to testify.  This
objection comes from counsel for appellant and not from
George Garrett and we cannot perceive that it has any
force under the circumstances.  The witness, George Gar-
rett, was under indictment for the same crime and doubt-
less desired to be permitted to present his side of the
case on the trial of the appellant so as to place himself
in the proper light when his own trial came on, instead
of having the whole blame placed upon himself and the
appellant exonerated of a crime for which he was at
least equally to blame.  The examination of this witness
by the court shows a due and careful regard for his
rights to invoke the privilege of not testifying, and it
was only for the purpose of ascertaining his real reason
for not desiring to testify that his examination was pro-
longed to the extent it was.  The court kept within care-
ful bounds and only permitted him to testify after it

found that it was his reluctance about testifying against his friend rather than a fear of incriminating himself. A discretion must be exercised by the trial judge based upon the capacity of the witness to comprehend his rights and the record shows that a due regard for every right to which the witnesses was entitled, was rigidly observed.

The second assignment of error is not well taken as it is predicated on the contention that the appellant was entitled to show in a general way his good character when the latter had not been attacked. The question which was refused by the court related not to his general reputation for peace or violence but was much broader and permitted him to say whether he had ever had any trouble with anyone before.

The third assignment of error complains of the instruction given the state in which the jury was advised as to the guilt of the appellant in the event they believed that a conspiracy existed between the two men to kill the deceased. They were properly told that it was immaterial as to which actually dealt the fatal blow if the two men had entered into a conspiracy to kill him and that he was killed pursuant to such conspiracy. The evidence warranted this instruction. The witness, George Garrett, testified that they left the house with the gun and ax and that it had been suggested by the appellant that they kill him. A conspiracy may be formed without any detailed agreement provided there was a common design to effect his death. All the circumstances show this to have been the case and the instruction was entirely proper and well founded in the record.

In the last analysis the burden of appellant's brief rests upon the jury's finding upon the facts. These have been summarized briefly but with an aim to correctness. The evidence at best shows that the appellant had entered into a conspiracy and that pursuant to the same the deceased was killed either by the appellant himself

or by George Garrett, and that with the view of hiding the crime they together went back twice to remove the body to a place where they thought the chances of finding it were remote. His confession, if such it can be called, was in the nature of self-serving statements incriminating his friend and accomplice, and the jury were the final arbiters of its truth or falsity and in the absence of error on the face of it the decisions of this court uphold its finality. The crime with which he was charged was of the most diabolical nature and while the penalty exacted of him is the most extreme known to the law, his fate has been wrought by his own hands. The court will, I am sure, read carefully the record and if they find, as I submit they will, that the verdict of the jury on the facts is not without ample support, I respectfully submit that the case should be affirmed.

Holden, J., delivered the opinion of the court.

The appellant, Allen Spight, was tried and convicted of the murder of Ira Short, and sentenced to death, from which judgment he appeals.

The evidence shows the crime was most diabolical and was participated in by another man, George Garrett. It appears that the appellant and Garrett had a controversy with the deceased Short regarding damages on account of Short's cow eating corn belonging to appellant and Garrett. The two had called upon the deceased at his home, and while there Garrett abused the deceased. That afternoon Garrett was at the home of appellant, when the deceased came there and left with the two men, appellant and Garrett, the latter armed with a shotgun, and the other with an ax upon his shoulder, and deceased unarmed.

According to the state's testimony, the appellant had an ax upon his shoulder and walked along with the deceased and Garrett following behind armed with the shotgun; that after they had proceeded some distance appellant

struck the deceased with the ax handle and cried out to
Garrett to shoot him, whereupon Garrett raised his
shotgun and shot the deceased in the face, causing him
to fall, and after he had fallen the appellant, Spight,
struck and killed him with the ax.    Appellant and
Garrett then dragged the body a considerable distance
to a small stream of water, where it was found eight
days thereafter in a decomposed condition, with the head
and face crushed and lacerated nearly beyond recog-
nition.    The two slayers were restless and sleepless the
night following the day of the killing and visited the
body again that night.    On the following day the ap-
pellant and Garrett went to a justice of the peace and
swore out a warrant for the arrest of the deceased, Ira
Short, for unlawful threats. It was not generally known
that Short had been killed until the body was discovered.
Suspicion pointed to appellant and Garrett, as it was
known that they had a controversy with Short and were
seen with him last on the day of his disappearance.    Ap-
pellant and Garrett were arrested and placed in jail
charged with the killing of Short.    After the two men
had remained in jail a short while the appellant made a
statement to the sheriff in which he said that the killing
of Short was done by Garrett, and that he was present
and helped to hide the body where it was found, but
that he, the appellant, did not participate in the killing,
and was forced through fear of Garrett to assist in
hiding the body.    When Garrett heard that appellant had
told the sheriff about the killing, he then made a confes-
sion to the sheriff in which he stated that he shot the
deceased in the face with a shotgun, and that appellant
then struck the deceased in the head with an ax.    Gar-
rett said that he shot the deceased after appellant had
first struck deceased with the ax handle and commanded
him to shoot him.    On the trial of the case the two
parties to this crime testified substantially the same as
they had stated to the sheriff as to how the killing had

occurred; the appellant testifying that Garrett and the deceased walked off ahead together, and Garrett struck the deceased over the head with the shotgun and then shot him in the face; that appellant had no ax and took no part in the killing, but, on the other hand, implored Garrett not to kill Short. The testimony of Garrett for the state was corroborated in a measure by other testimony in the case, and the testimony of the appellant was corrobrated by that of his wife and other circumstances. The appellant is a young colored man, claiming to be a minister of the gospel, and is shown' to have had a good reputation in the community in which he lives.

The appellant was tried and convicted before the 'trial and conviction of Garrett. At the appellant's trial the state offered to introduce Garrett as a witness. An attorney representing Garrett objected to Garrett testifying in the case on the ground that it would incriminate Garrett. Thereupon the court informed Garrett of his legal privilege to refuse to testify if he so desired, and his right to exercise such privilege. At first it seems that Garrett was inclined to refuse to testify against his partner in the crime, but finally decided to do so with full knowledge of his right to decline.

The appellant, through his able counsel here, earnestly urges that the court below erred, and assigns three grounds for reversal: First, that the court erred in allowing Garrett to testify in the case when it appeared that he was reluctant to do so and at first declined to do so until the court had led him into testifying by numerous questions; second, that the instructions granted the state submitting the question of conspiracy to the jury is wrong, because there is no evidence in the case upon which to base conspiracy; third, that the evidence in the case is insufficient to convict the appellant because the conviction rests solely upon the testimony of Garrett, whose testimony is manifestly false.

We think the first contention of appellant is untenable because we find, after a careful reading of the record, that the circuit judge fully and fairly notified Garrett of his right to refuse to testify in the case on the ground that it would incriminate him. It is true that Garrett hesitated and appeared to be reluctant at first to give his evidence in the case for some reason, but he finally stated that he did not object to testifying, and that he was willing to testify, fully understanding that it was his privilege to refuse if he desired to do so. This being true, we see no error of the lower court in allowing Garrett to testify in the case. However, we hold that at all events whether or not Garrett testified in the case willingly is a matter about which the appellant has no right to complain. The only person who could be heard to complain under such circumstances would be Garrett. But the inquiry as to whether Garrett has a right to complain does not arise here in the trial of appellant. We do not understand that the privilege of refusing to testify in such cases can be exercised by the party on trial for the witness. The right to refuse to testify is personal, and is given solely to protect the witness from incriminating himself. But that is the extent of the privilege guaranteed by the Constitution.

The second contention of appellant that the conspiracy instruction was error is not maintainable, for the reason that the proof is abundant in the record from which the jury were justified in finding that there was an expressed or implied understanding and common design between the appellant and Garrett to kill the deceased. The state, in establishing conspiracy, is never required to prove in express terms an agreement between the parties to do the unlawful act, but it is sufficient when the evidence reveals, from all the facts and circumstances, together with the acts of the parties, a common design or understood purpose between the parties to commit the crime. We deem it unnecessary to

narrate the different facts and circumstances, and acts of the appellant and Garrett, as testified to in this case, showing their joint participation and implied understanding which finally led up to the killing and hiding of the body and the concealing of the crime for many days thereafter, in order to make it clear that as a matter of law the instruction on conspiracy in this case was properly granted, because we think the joint participation in the killing as shown by the whole evidence was sufficient to sustain it, and the jury had a right to find under the proof that the conspiracy did exist and resulted in the murder.

As to the third point urged by the appellant, in which it is claimed that the testimony offered by the state is manifestly false, we are unable to agree with counsel. This court does not pass upon the truth or falsity of testimony in any case where the testimony offered is such that a jury is reasonably warranted in believing it and acting upon it. We will not to any extent usurp the province of the jury, who are the triers of fact, and who, with all the witnesses testifying in their presence, must necessarily be the best judges, and, under the law, are the final judges, of the truth or falsity of the testimony and the weight to be given thereto.

We have carefully noted the facts as testified to by Garrett, and it may be that some of the statements of Garrett are unreasonable and false. But it is not within our province to pass upon the facts; nor can we say that the verdict of the jury is manifestly wrong, where, as in this case, the testimony offered by the state is clear and positive, and may reasonably be believed by the jury.

We note that the appellant is a young man, a minister of the gospel, and bears a splendid reputation as a peaceful citizen in the community in which he lives. These facts, especially with reference to character, are valuable to the accused, but they were submitted to and

Oct. 1919].    Letow v. U. S. Fidel. & Guar. Co.  763

120 Miss.]                     Syllabus.

considered by the jury along with the other evidence in the case, and since the jury has said by its verdict, from all the evidence in the case, that the appellant committed the crime as charged, we cannot see our way clear to disturbing the finding of fact herein.

The judgment of the lower court is affirmed, and Friday the 2d day of January, 1920, is set for the day of the execution of the judgment.

*Affirmed.*