STATE *v.* MILAM, et al.

Division A. Nov. 13, 1950.

No. 37595 (48 So. (2d) 594)

14

Jan. 15, 1951 (49 So. (2d) 806)

**T. N. Gore,** Special Counsel for appellant.

16

**George H. Ethridge,** Assistant Attorney General, for appellant.

**J. J. Breland** and **John W. Whitten, Jr.,** and **Denton & Gore,** for appellees.

18

20

**Ethridge, C.**

The problem here is to determine whether testimony before a grand jury by appellees, H. E. Milam and S. L. Milam, was given under such circumstances as to render it involuntary and therefore unusable as the basis of a criminal prosecution.

In September, 1948, H. E. and S. L. Milam operated a store in Crowder, Quitman County, Mississippi, which was burglarized. They suspected that Chism and Tiner had committed the crime and proceeded individually to try to arrest them on the highway. Chism escaped but Tiner was ''arrested'' by them and taken to the sheriff. Tiner was there questioned and made some sort of alleged confession to the sheriff, which does not fully appear in the record. Chism asserted that the Milams had committed an assault and battery upon him, and Tiner charged the Milams with kidnapping. The Milams in turn charged Chism and Tiner with burglary. Each side was making charges against the other and urging the district attorney to permit them to submit their charges to the grand jury at the approaching term of circuit court.

Chism and Tiner employed an attorney who advised the district attorney that his clients wanted to go before the grand jury, tell everything they knew about these matters, including the alleged burglary, and make complaints against the two Milams. The district attorney advised the lawyer for Chism and Tiner that they could not make any statements that might incriminate them

without signing a waiver of immunity from prosecution for any charges which might grow out of their testimony, and that he wanted to prepare the waiver. This was done and it was executed by Chism and Tiner before the court convened.

Before and after the grand jury convened, the Milams also had discussed these matters with the district attorney and advised him that they wanted to appear before the grand jury and tell all that they knew about all of these matters. Hence the charge of burglary against Chism and Tiner was docketed for the grand jury to consider. The Milams were subpoenaed to appear before it. When this body assembled, the district attorney advised its members that he was going to call in the Milams and not to ask them any questions until he explained to the Milams certain things. The Milams came in the grand jury room in the presence of the grand jury, the county attorney, and the district attorney. They sat down and the district attorney showed them the written waiver which had been signed by Chism and Tiner several days earlier. He explained that these latter parties were going to tell all they knew of these matters, and that the Milams had a privilege not to testify if they did not want to. He explained that unless they signed the waiver they could not testify about anything except the burglary. There is some dispute in the record about this, but for the purposes of this opinion we will assume that they were advised that they could testify about the burglary without signing a waiver. However, it was in fact almost impossible for the appellees to separate their testimony about the burglary from that about the assault and battery and kidnapping. Apparently the only evidence of the burglary was the alleged confession, which was claimed to have been obtained from Tiner as a result of the alleged assault and battery.

The Milams then stated that they wanted to tell all they knew about all of these matters, and in the presence of the grand jury they then signed the same waiver

which Chism and Tiner had executed at an earlier date. At that time they had not retained an attorney to represent them.

They then proceeded to narrate separately their versions of these various events. Subsequently the Milams were indicted for assault and battery on Chism. They moved to quash this indictment on the ground that it was based upon their testimony before the grand jury and that such facts so acquired could not be the subject of the charges, because they had a constitutional immunity against self-incrimination, under Section 26 of the Mississippi Constitution. Section 26 provides that in all criminal prosecutions the accused "shall not be compelled to give evidence against himself . . .." The trial judge sustained a motion to quash the indictment on the ground that the calling of these defendants before the grand jury and informing them that their adversaries had signed a waiver and would testify divested the waiver of its voluntary status. He held that the defendants deemed that it was imperative that they testify before the grand jury under these circumstances and refute the testimony that would be given by their adversaries, and that the Milams thought that their refusal to sign the waiver in the presence of the grand jury would be construed by the grand jurors as a confession of guilt and would have an adverse effect on their case. From this action, the State appealed, under the authority of Mississippi Code of 1942, Section 1153.

We believe that there was ample evidence in the record and in the entire context of the situation to sustain the finding of the trial judge that the execution of the waiver and the testimony of the defendants were involuntarily given within the terms of their constitutionally protected rights. The State's attorneys acted manifestly in a spirit of fairness toward the appellees and advised them orally of their rights before they signed the waiver and testified. However, the entire situation itself must have exerted a strong pressure on appellees to do this.

The grand jury room, and its inquisitorial functions are things of considerable mystery and power to the average citizen. These men had been subpoenaed. They had no attorney, and they had not heard anything about the need to execute a waiver of immunity before they testified. Apparently the first they heard about it was when they came into the presence of the grand jury. It was trying to get the facts. If appellees refused to testify and relied on their privilege, they must have thought that the grand jury would infer guilt on their part. They further stated that they had no understanding of what the waiver of immunity meant. Under such psychological pressure of events they signed the waiver and testified as to all charges.

The trial judge who heard the testimony and observed the witnesses was justified in finding as he did that such circumstances deprived the testimony of appellees of its voluntary status. Certainly we cannot say that he was manifestly wrong. ▉ ▉ The protection of important constitutional privileges such as that against compulsory self-incrimination must encompass the subtle as well as the apparent. It is the responsibility of the courts to examine carefully the merits of every claim of this privilege. It is a privilege which a person must claim or he waives it. Steele v. State, 1899, 76 Miss. 387, 393, 24 So. 910; Church v. State, 179 Miss. 440, 176 So. 162; Brown v. State, 1914, 108 Miss. 46, 66 So. 288; Spight v. State, 1919, 120 Miss. 752, 83 So. 84. Yet the "better practice" is for him to be advised of his privilege in such a manner and under such circumstances that he may knowingly and voluntarily omit claiming it. Ivy v. State, 1904, 84 Miss. 264, 36 So. 265; Wigmore's "option of refusal" should be consciously and voluntarily unexercised. 8 Wigmore, Evidence, Section 2268 (3d Ed. 1940). Some courts even go so far as to hold that where a party was subpoenaed before a grand jury and testified voluntarily without claiming the privilege, his testimony is immune from use in a later prosecution,

even in the absence of a statute expressly granting such immunity. Doyle v. Wilcockson, 1918, 184 Iowa 757, 169 N. W. 241.

Such constitutional provisions granting witnesses a privilege from giving self-incriminating evidence are intended for the protection of the witness and have no proper application when the witness is not in danger of actual conviction. There are many statutes providing that such a witness is entitled to the immunity coextensive with that secured to him by the Constitution, and that thereby his testimony may be required. There are several Mississippi statutes granting such immunity where evidence has been given by an accused with reference to certain types of crimes. Mississippi Code 1942, Sections 2527, 2529, 2530, and 2531. However, these statutes are not applicable to the present situation.

The essential thing is that the testimony be voluntarily and willingly given. The turning point here is not whether the waiver but rather the testimony of appellees was of that nature. The two are interrelated, in that they both reflect the coercive effect of the situations at that time, but the motivation of appellees' testimony is the determining factor. If they had executed the waiver out of the presence of the grand jury, and with knowledge of their rights and had then testified, the improper motivation may have been absent.

The courts have recognized realistically and for a long time this situation-type of pressure on a witness. There apparently have not been any cases involving the particular facts of this case, but analogous to it in this sense is the almost unanimous agreement that in the trial of a criminal case it is improper for the prosecuting attorney or the court in the presence of the jury to call upon the defendant or his counsel to produce a document as being in his possession. See note, 110 A. L. R. 101 (1937). In Powell v. Commonwealth of Virginia, 1937, 167 Va. 558, 189 S. E. 433, 436, this occurred, for example, and the Court held that "When-

ever the accused . . . is forced to testify for fear that adverse inferences might be drawn from his failure, then he has not volunteered as a witness and has not waived his rights. Such waiver only follows where liberty of choice has been fully accorded".

The same type of protection should be applicable to testimony in grand jury proceedings. Wigmore says that "the protection . . . extends to all manner of proceedings in which testimony is to be taken . . . it therefore applies to . . . investigations by a grand jury . . .." 8 Wigmore, Evidence, pages 325-326, footnote 12. Although a statute granted immunity in Fine v. State, 1929, 112 Tex. Cr. R. 652, 18 S. W. (2d) 156, the factual situation otherwise was similar to the present one. It is well settled in Mississippi and elsewhere that ▇▇ ▇ the constitutional privilege against self-incrimination applies to proceedings before a grand jury , or a coroner's jury, as well as to those before a court. 5 Mississippi Digest, Criminal Law, 42; Counselman v. Hitchcock, 1892, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110.

▇▇ ▇ For the above reasons the action of the trial judge in sustaining the motion to quash the indictment is hereby affirmed.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.

**Kyle, J.,** took no part in the consideration and decision of this case.

ON SUGGESTION OF ERROR.

**McGehee, C. J.**

In the suggestion of error filed by the district attorney there is much concern therein expressed that our de-

cision heretofore rendered in this cause has "given freedom from prosecution to the perpetrators of a serious crime". The appeal was from a judgment of the trial court which quashed the indictment against the appellees on the ground that they had testified before the grand jury under such circumstances as to render their action in so doing not altogether voluntary. ▮ ▮ The judgment of the trial court merely quashed the indictment and granted the State an appeal; it did not acquit and discharge the defendants. We affirmed that judgment, thereby holding that the appellees were immune from prosecution under the indictment returned by the grand jury before whom they testified, and we did not hold that they would be immune from prosecution under an indictment by some other grand jury before whom they may not appear as witnesses to testify.

Section 1153, Code of 1942, provides that: "The state . . . may prosecute an appeal from a . . . judgment sustaining . . . a motion to quash an indictment, . . .; but such appeal shall not bar or preclude another prosecution of the defendant for the same offense." We held in the former opinion that Sections 2527, 2529, 2530 and 2531, Code of 1942, granting immunity are not applicable to the present situation, and no other statute is called to our attention either by the prosecution or the defense that would grant permanent immunity from prosecution for the offense here charged if and when an indictment is returned on testimony before a grand jury other than that of the accused offenders.

Suggestion of error overruled.