536 So.2d 897 (1988)
John WRIGHT
v.
J.D. McAdory, Sheriff.
No. M-2630.
Supreme Court of Mississippi.
December 7, 1988.
*898 Cynthia Stewart, Jackson, for appellant.
Robert Taylor, Jr., Asst. Dist. Atty., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
This case presents important questions regarding the administration of our *899 criminal justice system. To what extent is the district attorney empowered to grant a witness immunity from prosecution in exchange for the witness' appearance before the grand jury? We answer the question and hold that, so long as the authority and approval of the circuit court are obtained, the prosecuting attorney may strike an enforceable agreement with the prospective witness that, if he or she will testify as a witness in any pending proceeding, he or she may be granted immunity from prosecution.
Our second question is whether a person so immunized may be subpoenaed and compelled to give testimony before a grand jury. We consider this question, of course, in the context of the person's right to remain silent secured by the federal Fifth Amendment and Article 3, Section 26 of this state's bill of rights. Our answer turns on the extent of the immunity granted. So long as the immunity is co-extensive with the individual's privilege against self-incrimination, a fortiori what he says may not incriminate him. Only where such co-extensive immunity is granted and made enforceable may the witness be compelled to testify and, upon his refusal, held in contempt.
In the case at bar, the immunity tendered falls short of the required co-extensivity. The writ of habeas corpus is granted and the witness is discharged from the burdens of the Circuit Court's contempt order.

II.
On April 25, 1988, Leron (Larone) Brown was shot and killed on the campus of Jackson State University in Jackson, Mississippi. The prime suspect in this shooting is Chauncey Wright. Four days after the shooting, the Hinds County Grand Jury convened to consider the matter. John Wright, today's petitioner and the brother of Chauncey Wright, was subpoenaed to appear before the grand jury. It appears that John Wright had been present at the time of the April 25 shooting.
Before the grand jury, Wright was told that he was not a suspect himself. The district attorney's office further advised Wright that, even if in testimony he said anything that might incriminate him, he would enjoy immunity from prosecution. Notwithstanding, John Wright refused to testify, invoking the Fifth Amendment.[1]
Immediately thereafter the district attorney brought contempt charges against Wright for his failure to testify before the grand jury. The matter was heard before the Circuit Court of Hinds County on May 10, 1988, Hon. William F. Coleman presiding. At that hearing the District Attorney testified that Wright could be charged with accessory to the crime of murder. The Court did not rule but suggested that the witness should be given a second opportunity to appear before the grand jury when it convened on May 20.
Before May 20 the district attorney's office made John Wright a written offer of immunity, agreeing not to prosecute him if he testified fully and truthfully before the grand jury.[2] In addition, the D.A.'s office *900 gave Wright and his attorney a written list of questions he could expect to be asked before the grand jury. The questions were:
Were you present on the scene at Jackson State University when he was shot on April 25, 1988?
Who shot him?
Why? What was Larone doing at the time?
Did you see Chauncey Wright earlier that A.M. with a gun?
Did you tell him not to take a gun to the Jackson State University campus with him?
What did you say to him?
How many times did Chauncey shoot Larone Brown?
What did you tell or say to Chauncey when he pulled the gun out of his briefcase?
Did you tell him, "Don't do that, man?"
Was it the same gun you were shot with at Tougaloo?
Did Chauncey shoot you then or did you shoot yourself?
Did Chauncey break Larone's windshield late Friday night (April 22, 1988) or early Saturday A.M.
Did you see him? Why?
Notwithstanding, John Wright again asserted that the Fifth Amendment afforded him a right to remain silent and he refused to answer any questions. In due course thereafter, the Circuit Court held Wright in contempt and committed him to the custody of the Sheriff of Hinds County.
On May 23, 1988, John Wright filed with this Court his Petition for Writ of Habeas Corpus challenging the legality of the Circuit Court's contempt order. We ordered Wright released on bond pending consideration of his petition which is now before us for action on the merits.

III.
Any citizen believed to have knowledge of facts relating to matters the subject of judicial proceeding may be called as a witness. If the witness balks, he is subject to the subpoena power of the court, or, in this instance of the grand jury. The content of that power is that the witness must tell under oath what he knows. Refusal to submit ordinarily renders the witness subject to contempt proceedings and, unless he can present some legally adequate excuse or justification for his recalcitrance, ultimately to incarceration. So John Wright has been held in contempt.
The legality of the Circuit Court's contempt order turns on two points: first, the enforceability of the immunity grant tendered *901 by the district attorney and, second, the adequacy of that grant to secure Wright from prosecution should he incriminate himself. This Court has in the past expressed considerable doubt that the district attorney had authority to grant a witness immunity from prosecution in exchange for testimony. See Hubbard v. McKey, 193 So.2d 129, 131 (Miss. 1966). See also Smith v. State, 492 So.2d 260, 268 (Miss. 1986). These doubts were thought consistent with the view generally taken around the country that there is no prosecutorial power to grant a witness immunity absent statutory authority.
Developments in our law respecting enforceability of plea bargains and entitlements to immunity by virtue of subpoenaed testimony seem quite inconsistent with the traditional view. Beyond that, in our earlier cases we gave no consideration to the fact that a grant of immunity in exchange for testimony may be considered a compromise of a possible criminal prosecution against the witness. In this light we find in the field Miss. Code Ann. § 99-15-53 (1972), which provides
A district attorney shall not compromise any cause or enter a nolle prosequi, either before or after indictment found without the consent of the court. [Emphasis supplied]
This statute has been on the books for many years and, to the best of our knowledge, it has not heretofore been thought to authorize the district attorney to make offers of immunity. Nevertheless, in a very real sense, the immunity grant tendered Wright is a "compromise" of possible criminal "cause" against Wright "before ... indictment found".
There is other law in the field. We find a variety of forms and contexts in which individuals may come to enjoy immunity from prosecution. We find four statutory enactments providing for immunity for witnesses in specific types of prosecutions. These include Miss. Code Ann. § 99-17-23 (1972) (duelling); Miss. Code Ann. § 99-17-27 (1972) (gambling); Miss. Code Ann. § 99-17-29 (1972) (operating a lottery); and Miss. Code Ann. § 99-17-31 (1972) ("offenses affecting the legislature"). There is no law, statutory or otherwise, declaring these the only contexts in which immunity may be granted.
Then there is our case law. In Moore v. State, 242 So.2d 414 (Miss. 1970), the defendant and his attorney thought they had an agreement that the district attorney would reduce the charges against defendant if he cooperated in prosecution of alleged accomplices. Defendant in fact cooperated and appeared before the grand jury, but the grand jury indicted him for the principal offense of burglary, using his testimony as at least a partial basis therefor. This Court ordered the indictment quashed. See also State v. Milam, 210 Miss. 13, 48 So.2d 594 (1951).
The implicit premise of Moore is that an agreement such as that made by the prosecution and the defendant is enforceable. This premise has ripened into unmistakable law in the context of plea-bargaining. There we rely upon a contract model.[3] Where the prosecution and the defense reach a plea-bargain agreement and where the defendant relies upon that agreement to his detriment, the prosecution becomes bound to its bargain. See McFee v. State, 511 So.2d 130, 133 (Miss. 1987); Edwards v. State, 465 So.2d 1085 (Miss. 1985); Salter v. State, 387 So.2d 81 (Miss. 1980). Here the obligatory cite is Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432-33 (1971), which held:
When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.
This rationale is seen equally applicable to the immunity grant situation, for an immunity grant is legally indistinguishable from a pre-indictment plea bargain.
Kellum v. State, 194 So.2d 492 (Miss. 1967) exerts further power suggesting reconsideration of the traditional view. The facts are like Moore's, except that the district *902 attorney had made no promise of immunity. The witness was subpoenaed, testified and was then prosecuted. Kellum says you can't do that. Because a knowing and voluntary waiver is required to release one's privilege against self-incrimination, one who testifies before a grand jury under the coercion of a subpoena is immune from prosecution.
In short, one who is required by the power of the state to testify to his hurt is immune from prosecution for the thing for which he is required to testify, whether that testimony is used by the state or not.
Kellum v. State, 194 So.2d at 494. When the prosecution procures the involuntary witness, it infects him with immunity from prosecution.
What these cases make clear is that there are ways in which the prosecution may indirectly, and perhaps even unintentionally, grant a grand jury witness immunity from prosecution. Under Kellum, if John Wright appeared before the grand jury pursuant to subpoena and answered questions propounded to him, he could not be prosecuted for any matter growing out of or related to that testimony. If the district attorney can indirectly and unwittingly grant immunity, it would be anomalous if not absurd that our law says he may not do so knowingly and intelligently.
We return to Section 99-15-53. That is the statute noted above requiring any compromise of criminal causes to be approved by the circuit court. It is important to note that the statute contemplates compromises made "either before or after indictment found." The record before us reflects that John Wright is liable to prosecution as a possible accessory to murder  whether before or after the fact is not made clear.
Edwards v. State, 465 So.2d 1085 (Miss. 1985) and Salter v. State, 387 So.2d 81 (Miss. 1980) tell us by analogy that any agreement the prosecution makes with Wright, whereunder he is to testify before the grand jury in exchange for immunity from prosecution, will be wholly enforceable. Any effort on the part of the prosecution to renege after Wright's testimony would be given short shrift. Kellum instructs us that, if Wright testifies before the grand jury, he acquires immunity whether the prosecution has agreed to such or not.
If an agreement is enforceable, that is only because the parties had the legal power to make it. Edwards, Salter and Kellum must be understood in this light. Our fundamental premise is thus established: the district attorney has the authority to make an agreement with an individual the terms of which, in substance, are (1) the state agrees that the witness will not be prosecuted and (2) the individual agrees that he will testify in subsequent judicial proceedings. Where that agreement is submitted to and approved by the circuit court, there can be no doubt of its validity and enforceability. See Miss. Code Ann. § 99-15-53 (1972); Edwards v. State, supra; Salter v. State, supra.

IV.
The district attorney's authority to offer immunity notwithstanding, Wright argues that the immunity tendered is not enough to grant him protection as broad in scope as that afforded him by the Fifth Amendment. He refers to the fact that the agreement is made only with the district attorney or the Seventh Circuit Court District and doubts that it is binding upon any other district attorney.
The point is specious. The district attorney for the Seventh Circuit Court District is a duly empowered representative of the State of Mississippi. His authority in the premises is sufficient to obligate not only his own office and, as well his successors in office, but also the entire state. If the agreement be made and enforceable, there will be no hereafter at the hands of any other present or future representative of the prosecutorial interest of the State of Mississippi.
Wright next complains that the Hinds County District Attorney cannot bind federal authorities and that any immunity he might be extended by state authorities would afford him no protection in the *903 event of prosecution by federal authorities based upon matters he might reveal in his grand jury testimony. The facts of this case suggest that the likelihood of federal prosecution is quite remote. Assuming arguendo the viability of a possible federal prosecution, present federal law holds that federal authorities are obligated to honor and respect state grants of immunity. See Murphy v. Waterfront Commission, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678, 695 (1964); Kastigar v. United States, 406 U.S. 441, 456-57, 92 S.Ct. 1653, 1663, 32 L.Ed.2d 212, 224 (1972). Though we have no authority to require the federal judiciary to continue to adhere to that interpretation of the Fifth Amendment, we regard the foreseeability of some alteration as sufficiently remote that it need not concern us this day.

V.
Notwithstanding all that we have said above, John Wright says "No, thank you," to the prosecution's tender of immunity, that he is quite content to enjoy his privilege against self-incrimination. What Wright is arguing here is that prosecution cannot force him into a waiver of his privilege by an immunity offer.
Without doubt one of the most settled premises in our constitutional jurisprudence is that no individual may be compelled to testify against himself or to offer testimony which might render him liable to a criminal prosecution. The privilege is available to grand jury witnesses. Lefkowitz v. Cunningham, 431 U.S. 801, 804, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1, 6 (1977). But this does not mean that the individual cannot be made to testify as to anything. The privilege protects him only with respect to that which might subject him to possible prosecution. The potential for prosecution is measured objectively, the court not the individual having the ultimate say so. See Mississippi State Bar v. Attorney L, 511 So.2d 119, 123-25 (Miss. 1987).
On matters which will not incriminate a person and will not render him susceptible of prosecution, he is in the same position as any other witness; that is, he may be subpoenaed and required to answer questions under oath subject to punishment via contempt if he refuses. Seen in this light, our question becomes not whether Wright can be compelled to waive his Fifth Amendment privilege; rather, our question is whether he has a Fifth Amendment privilege in the premises. More specifically, is the immunity grant tendered by the district attorney and approved by the Circuit Court sufficiently broad that Wright's testimony is no longer privileged  in the sense that there is no longer any possibility that he may be prosecuted therefor?
Because an individual may not involuntarily be stripped of his privilege against self-incrimination, he may be compelled to testify before the grand jury only when the grant of immunity is coextensive with the protections he enjoys under the Constitution. Any immunity grant which affords the individual less protection than is otherwise available to him by law is by definition inadequate.
We are familiar with the debate which has raged across the country and over time whether immunity should be of the use/derivative use variety or a broader transactional immunity. See 1 LaFave and Israel, Criminal Procedure § 8.11(b) (1984). What concerns us about the use/derivative use is that it permits a subsequent prosecution of the witness with evidence gained from independent sources. We regard it inevitable that under a use/derivative use immunity regime prosecutors will receive incentives to work backwards from what they learn from the witness. So-called independent sources in this sense will seldom be independent. Use/derivative use immunity will not prevent a prosecutor acting in good faith from relying inadvertently on information derived from immunized testimony in determining trial strategy in a subsequent prosecution.
When a prosecutor decides to grant immunity to a witness such as John Wright  and thus strip that witness of his right to remain silent, he must be prepared to make final peace with that witness, subject only to a possible perjury charge. To assure *904 that this be so, we hold that Article 3, Section 26 of the Mississippi Constitution requires a transactional immunity grant.
To place the individual such as John Wright in a position where he has no right to refuse to testify  and to subject him to contempt if he balks  the prosecution is required to grant him immunity (a) from prosecution for his involvement in the transaction which is the subject of the grand jury investigation and for or on account of any transaction, matter or thing concerning which he may testify or produce evidence. Moreover, no testimony or evidence produced by the witness, nor any information directly or indirectly derived from such testimony or evidence, may be used against the witness in any criminal prosecution, except perjury.[4] Only such broad immunity will make the individual as secure as if he had remained silent, and in the end this Court sits to assure that security.
If the immunity to this extent is granted in writing, the witness enjoys an immunity coextensive with rights otherwise available to him under our law. There is thus no longer any possibility of self-incrimination that leads to prosecution. Under such circumstances, the witness may be called before the grand jury. He may be held in contempt if he refuses to answer the same as any other witness.
The only matter for which the witness may be prosecuted is perjury. See Miss. Code Ann. § 97-9-59 (1972). The prosecution may not in its immunity grant, enlarge upon or redefine perjury except as it is defined in the statutes.

VI.
The above standards well in mind, we examine the immunity grant set forth in the May 20, 1988, letter addressed by the district attorney to Wright's counsel. We find the grant inadequate on several points.
First, the letter limits the immunity to Wright's prosecution for his involvement in the shooting death of Larone Brown on May 25, 1988, and events leading thereto. This falls short of granting him transactional immunity as defined above. In the first instance, the immunity offered does not encompass any after-the-fact accessory liability. Miss. Code Ann. § 97-1-5 (1972). Further, suppose that before the grand jury Wright inadvertently manages to implicate himself in another crime. He is entitled to immunity on that score the same as if he had never appeared before the grand jury.
Second, the immunity grant provides that John Wright "shall truthfully disclose" all he knows about the shooting death of Larone Brown and that he shall "truthfully testify". He is further required not to "attempt to protect any person or persons" or "falsely implicate" any person. We assume that the prosecution here does not intend to enlarge upon the statutory definition of perjury. The point is not completely clear, and we think it the better course in immunity grants that the witness be advised that he is at all times subject to prosecution for perjury as defined in Miss. Code Ann. § 97-9-59 (1972), without prosecutorial embellishment.
Third, the immunity letter states that it is not binding upon other federal, state and local prosecuting authorities. In view of what has been said above, at least as to other state authorities, this is erroneous as a matter of law. Any immunity grant shall be binding upon all other state authorities, period. The Murphy and Kastigar cases make clear that federal authorities take a similar view.
Finally, the immunity agreement provides that, should he give false or misleading information, Wright "shall be subject to prosecution for any state or federal criminal violation of which any of the foregoing offices or agencies have knowledge, including, but not limited to, perjury and obstruction of justice." This is much too sweeping. If this is the deal Wright would be far more secure if he simply kept his mouth shut. In order to place Wright in *905 the posture where he may be compelled to testify, the grant of immunity must be coextensive with the cloak of the constitution. This means that arising out of his testimony he enjoys complete transactional immunity with the sole and limited exception that he may be prosecuted for perjury, period.
Seen in the foregoing light, the immunity grant tendered by the Hinds County District Attorney is far less valuable to Wright than his privilege against self-incrimination under federal and state constitutions. Therefore, Wright was entitled to invoke his privilege and to insist upon it in the face of questioning before the Grand Jury about the shooting death of Larone Brown. Because he was so entitled as a matter of fundamental right, the Circuit Court had no authority to order him to testify.[5] More to the point, the Circuit Court had no authority to hold him in contempt of court for his refusal to testify.
John Wright's petition for writ of habeas corpus is granted, and he is hereby ordered released from custody of the Sheriff of Hinds County, Mississippi, and from all conditions and obligations of the Circuit Court's contempt order and of any bond or bonds posted in these proceedings. This action is without prejudice to the power of the Hinds County District Attorney to commence and pursue in the premises such further proceedings as may be appropriate, not inconsistent with this opinion.
PETITION FOR WRIT OF HABEAS CORPUS GRANTED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] We make numerous references in this opinion to "the Fifth Amendment". The individual enjoys a right to remain silent, a privilege against self-incrimination by virtue of two independent rules of positive constitutional law. The first of these is the Fifth Amendment to the Constitution of the United States, made enforceable against the State of Mississippi, by the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6-11, 84 S.Ct. 1489, 1492-95, 12 L.Ed.2d 653, 658-61 (1964); see also Brown v. Mississippi, 297 U.S. 278, 285-87, 56 S.Ct. 461, 464-65, 80 L.Ed. 682, 687-88 (1936). The second is found in Article 3, Section 26 of the Mississippi Constitution of 1890. The limited point for the moment is that references hereafter to "the Fifth Amendment" include both.
[2] The immunity agreement in writing is set forth in full as follows:

Honorable Cynthia Stewart [Attorney for John Wright] Jackson, Mississippi
Re: John Wright
Dear Ms. Stewart:
If you [sic] client, John Wright, fully complies with the understandings specified below, he will not be prosecuted by this office for his involvement in the shooting death of Larone Brown on April 25, 1988 and the events leading thereto.
The understandings are that John Wright shall truthfully disclose all information with respect to the activities of himself and others concerning the above subject matter; shall cooperate fully with agents of the State of Mississippi, the Hinds County Grand Jury, Hinds County Sheriff's Department, the Office of the District Attorney, State of Mississippi; and truthfully testify before any grand jury and/or at any trial or other court proceeding with respect to the above subject matter. Your client must answer all questions concerning these matters and must not withhold any information whatsoever. Your client must not attempt to protect any person or persons through false information or omission, and most importantly, must not falsely implicate any person.
It is further understood that this agreement is limited to the extent that this office can enter such an agreement, and cannot bind any other federal, state or local prosecuting authorities, although this office will bring the cooperation of John Wright to the attention of other prosecuting offices if requested.
It is further understood that John Wright shall at all times give complete, truthful and accurate information and testimony, and must not commit any crimes, whatsoever. Should John Wright commit any crimes, or should it be judged by this office that he has given false, incomplete or misleading testimony or information, or has otherwise violated any provision of this agreement, he shall be subject to prosecution for any state or federal criminal violation of which any of the foregoing offices or agencies have knowledge, including, but not limited to, perjury and obstruction of justice.
No additional promises, agreements and conditions have been entered into other than those set forth in this letter and none will be entered into unless in writing and signed by all parties.
 Very truly yours,
 /s/
 Assistant District Attorney
 AGREED TO AND CONSENTED TO:
 /s/ ______________________________
 (John Wright)
 /s/ ______________________________
 (Cynthia Stewart, his attorney)

[3] See generally North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Reynolds v. State, 521 So.2d 914, 916 (Miss. 1988).
[4] The transactional immunity construction we afford our constitution's privilege against self-incrimination stands as an independent state ground for decision within Michigan v. Long, 463 U.S. 1032, 1037-44, 103 S.Ct. 3469, 3474-78, 77 L.Ed.2d 1201, 1212-16 (1983).
[5] See In Re Brown, 478 So.2d 1033, 1036-37 (Miss. 1985).