818 So.2d 1207 (2002)
Greg WATTS and Carla L. McLemore a/k/a Carla Lehmann McLemore, Appellants,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00847-COA.
Court of Appeals of Mississippi.
April 30, 2002.
*1208 Tim David Blalock, Natchez, L.H. Rosenthal, attorney for appellants.
Office of the Attorney General by Dewitt T. Allred III, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING[1]
SOUTHWICK, P.J., for the court.
¶ 1. Carla McLemore and Greg Watts were convicted of aggravated assault upon Tim Buckley. On appeal, both allege that the indictments should have been quashed. McLemore also claims that the evidence does not support her conviction. We disagree with their arguments and affirm.

*1209 FACTS
¶ 2. Tim Buckley and Carla McLemore were neighbors in Meadville who had been involved in a boundary dispute. Their litigation was settled, but perhaps animosities remained. On the afternoon of May 28, 1999, Buckley was trimming hedges along the property line when McLemore came up to him and eventually pushed him several times. Buckley grabbed her arms and they fell to the ground with Buckley on top of McLemore. Greg Watts, who testified that he had been inside McLemore's house when this confrontation began, then entered the fray by striking Buckley on the back of the head. Buckley stopped resisting, remained conscious, and was severely beaten.
¶ 3. His injuries included three lacerations that required stitches. His retinas were detached from his eyes and several surgeries were required; his vision remains impaired. Buckley's wife only saw the end of the beating of her husband. She immediately called the sheriff.
¶ 4. Watts and McLemore testified that Buckley started the incident. Both defendants alleged that Watts hit Buckley only in order to rescue McLemore, that only a few blows were struck, and that Buckley was the guilty party. Buckley filed aggravated assault charges against Watts and McLemore. Watts and McLemore filed simple assault charges against Buckley. McLemore also filed aggravated assault charges against Buckley. Each party was subpoenaed to appear before a Franklin County grand jury. All three appeared without counsel and testified. All were given the required warnings about their relevant constitutional rights before their testimony.
¶ 5. Only Watts and McLemore were indicted. After a jury trial, both were convicted of aggravated assault. Each was sentenced to five years imprisonment. The entirety of McLemore's sentence was suspended, with five years probation. Watts had to serve six months, and the remainder was to be followed by probation.

DISCUSSION

I. Denial of Motions to Quash Indictments
¶ 6. McLemore and Watts assign as error the circuit court's failure to grant their motions to quash the indictments. The motions stated that their rights under the Fifth and Fourteenth Amendments of the United States Constitution and related rights under the Mississippi Constitution were violated by requiring them to appear before a grand jury. Also submitted was an agreed set of facts signed both by the district attorney and the attorney for the defendants. The motions sought an evidentiary hearing. That apparently was never held, and an order was entered denying the motion.
¶ 7. An elaboration of the factual background for the motion would be useful. Following the altercation, Buckley filed affidavits charging both McLemore and Watts with aggravated assault while Watts and McLemore filed affidavits charging Buckley with simple assault. McLemore later filed an affidavit charging Buckley with aggravated assault.
¶ 8. McLemore, Watts, and Buckley were subpoenaed to appear before the grand jury. All three appeared separately before the jurors and testified. Each was read this warning:
Before we ask you any questions, you must understand your rights.
(1) You have a right to remain silent, say nothing at all or refuse to answer any questions.
(2) Anything you say can and will be used against you in a court of law.

*1210 (3) You have a right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
(4) If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.
(5) If you decide to answer questions now, without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
(6) Do you understand these rights?
All three testified, and no attorney accompanied any of them. We have no transcript. The defendants allege that they had been led to believe that they were subpoenaed to explain their charges against Buckley, not Buckley's charges against them.
¶ 9. The defendants argue that their testimony was involuntary since they were required to appear before the grand jury and did not know they were targets. It is true that their appearances before the grand jury were as a result of the coercive power of subpoenas. Miss.Code Ann. § 99-9-17 (Rev.2000). Yet it is admitted that their right to refuse to testify was explained to each of them in advance of questioning. We examine the state and federal constitutions on the right against self-incrimination to determine whether anything improper occurred here.

A. Mississippi Constitution: Compelled Testimony
¶ 10. The state and federal constitutions each provide that a person cannot be forced to incriminate himself in a criminal proceeding. MISS. CONST. Art. 3, § 26 (1890); U.S. CONST. amend. V. In Mississippi it is presumed that "similar sections of the United States Constitution and the Mississippi Constitution ought to be construed similarly." McCrory v. State, 342 So.2d 897, 900 (Miss.1977).
¶ 11. One precedent cited by the defendants required the quashing of an indictment because the testimony given by those defendants before a grand jury was involuntary. State v. Milam, 210 Miss. 13, 26, 48 So.2d 594, 597 (1950). As here, there was a dispute in Milam as to who should be considered the perpetrators and who the victims in an incident. The two defendants, H.E. and S.L. Milam, attempted a citizen's arrest upon Chism and Tiner because the Milams suspected them of burglarizing their store. Id. at 21, 48 So.2d 594. In response to the burglary charge by the Milams, Chism charged the Milams with assault and battery; Tiner charged the Milams with kidnaping. Id. As the Supreme Court noted, both sides were "urging the district attorney to permit them to submit their charges to the grand jury...." Milam, 210 Miss. at 21, 48 So.2d 594.
¶ 12. Both Chism and Tiner signed a waiver of immunity in the presence of their attorney before appearing at the grand jury. Id. at 22, 48 So.2d 594. The Milams were not informed that they would need to execute a waiver until they were seated in the grand jury room. Id. at 22, 48 So.2d at 595. At the same time the Milams were informed of the waiver, they were also shown the waiver executed by Chism and Tiner. Id. at 22, 48 So.2d at 595. The Milams were told that unless the waiver were signed, they could not give any testimony concerning the assault and battery or kidnaping charges against them but could only testify as to the burglary charges they filed against Chism and Tiner. Id. at 22, 48 So.2d at 595. The Supreme Court found that it would be difficult for the Milams to testify as to one set of charges and not the other because "the only evidence of the burglary was [an] *1211 alleged confession ... claimed to have been obtained from Tiner as a result of the alleged assault and battery." Milam, 210 Miss. at 22, 48 So.2d at 595.
¶ 13. The Court based its decision on the "entire context of the situation." Id. at 24, 48 So.2d at 595. It would appear that involuntariness was created from knowledge by the witnesses that their adversaries had already given their stories about the events. Unless the other viewpoint was explained, the grand jurors would likely indict the individuals who refused to testify and therefore might appear guilty. Id. at 23, 48 So.2d at 595. The Court referred to the "inquisitorial function" of the grand jury and the "considerable mystery and power" the grand jury represents to the "average citizen" as potentially influencing the Milams. Id. at 24, 48 So.2d at 595. All of these factors combined to create a "coercive effect." Id. at 25, 48 So.2d at 596.
¶ 14. We find that Milam is largely consistent with but has also been largely replaced by the analysis that arises from Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966). Whatever the setting, be it custodial interrogation by law enforcement officers, or sworn testimony before a grand jury or at a criminal trial, the starting point is that statements be made after a knowing and voluntary waiver of the right against self-incrimination. Today, that means that an adequate explanation of the operation of the right against self-incrimination be given, and that coercion or improper inducements not occur. Chase v. State, 645 So.2d 829, 838-39 (Miss.1994). Whether Milam would have resulted in a reversal had Miranda warnings already been required and been given to those witnesses is uncertain. We do not find that the appearance of multiple witnesses at a grand jury, who have divergent views as to the villains and the victims in an incident, by itself creates coercion that overrides the warnings about self-incrimination.
¶ 15. In our case, Watts, McLemore and Buckley were subpoenaed, read their Miranda rights, and testified. They were told that they did not have to answer any questions, could end the questioning at any time, and could get an attorney. From the "entire context of the situation" as stated in Milam, or from the totality of the circumstances, we conclude that the testimony of neither defendant was involuntary under state law.

B. Mississippi Right to Counsel
¶ 16. Both defendants were told in the warnings that they were given before testifying that they could consult with an attorney and could even have an attorney present during questioning. If the witness could not afford an attorney, one would be provided. There is no claim that either sought to have counsel present and was refused. We are cited to no authority, and do not find any, that anything under state law requires more protection than this.

C. United States Constitution: Fifth Amendment
¶ 17. The United State Supreme Court has considered the extent of Fifth Amendment protection in a grand jury setting when the individual providing testimony might be a possible "target" for indictment. United States. v. Washington, 431 U.S. 181, 182, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977). Washington was suspected of participating in the theft of a motorcycle. He was subpoenaed to appear before a grand jury but was not told that he might be indicted for theft if the grand jury did not believe his explanation for the motorcycle's presence in his van. Id. Washington was given oral Miranda warnings, a card with a copy of the Miranda warning, and also signed a waiver against self-incrimination. *1212 Id. at 183, n. 2, 97 S.Ct. 1814. Washington was indicted after testifying. Id. at 184, 97 S.Ct. 1814.
¶ 18. The Supreme Court stated that the Fifth Amendment applies to grand jury proceedings but "proscribes only self-incrimination obtained by a `genuine compulsion of testimony.'" Id. at 187, 97 S.Ct. 1814. The record must contain evidence of "some compulsion" in order to protect an individual from testimony that the individual has provided that also tends to incriminate that individual. Id. The Court stated that while the atmosphere of the grand jury room might subtly influence one to tell the truth such a subtle influence did not violate the Fifth Amendment Id. at 187-88, 97 S.Ct. 1814. The "test is whether, considering the totality of the circumstances, the free will of the witness was overborne." Washington, 431 U.S. at 188, 97 S.Ct. 1814. It was "inconceivable" that the explicit warnings given Washington would have failed to alert him "to his right to refuse to answer any question which might incriminate him" and that the warnings "also eliminated any possible compulsion to self-incrimination which might otherwise exist." Id. Further, the Court stated that "[b]ecause target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of Fifth Amendment rights." Id. at 189, 97 S.Ct. 1814.
¶ 19. The Supreme Court addressed one other issue applicable to our appeal. An argument was made that individuals would be reluctant to invoke their right against self-incrimination as the "grand jury w[ould] infer guilt from invocation of the privilege." Id. at 191, 97 S.Ct. 1814. The Court noted that the grand jury does not decide guilt or innocence and that invocation of the right is not admissible before a criminal jury. Id. Thus no compulsion arose.
¶ 20. Similarly, McLemore's mere appearance before the grand jury did not violate any federal right. The "obligation to appear [before a grand jury] is no different for a person who may himself be the subject of the grand jury inquiry" than for a person merely called as a witness. United States v. Mandujano, 425 U.S. 564, 574, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). Furthermore, a witness appearing before a grand jury "can be required to answer ... so long as there is no compulsion to answer questions that are self-incriminating." Id.
¶ 21. The Mississippi Supreme Court has held that an individual may be held in contempt for refusing to provide testimony to a grand jury that incriminates that individual, only if that individual has been granted immunity from prosecution and that "immunity is co-extensive with the individual's privilege against self-incrimination." Wright v. McAdory, 536 So.2d 897, 899 (Miss.1988). It follows that an individual may not be held in contempt for refusing to testify if the testimony sought would incriminate the witness.
¶ 22. There is nothing in the record to suggest that either defendant was coerced into testifying or was compelled to answer any question.

D. United States Constitution: Sixth Amendment Right to Counsel
¶ 23. A witness "before a grand jury cannot insist, as a matter of constitutional right, on being represented by his counsel...." United States v. Mandujano, 425 U.S. 564, 568, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). The Supreme Court reasoned that this is because the grand jury witness has not yet become an accused, so there would be no Sixth Amendment *1213 implications. Id. A grand jury witness may consult counsel but counsel may not be allowed in the grand jury room. Id. Also, the Supreme Court has never held that an individual has a constitutional right to have counsel outside the grand jury room. Connecticut v. Gabbert, 526 U.S. 286, 292, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).
¶ 24. Therefore, the warnings read to McLemore, Watts and Buckley provided a more expansive right to counsel than required under the federal constitution. There is no evidence that the offer of counsel was accepted but then not honored. There is no error.
¶ 25. The trial court was correct in denying the motions to quash the indictments.

II. Denial of Motion for New Trial
¶ 26. A motion for a new trial challenges the weight of the evidence. McClain v. State, 625 So.2d 774, 781 (Miss. 1993). The trial judge has considerable discretion because that judge has seen and heard the evidence. The motion should be granted only to prevent "an unconscionable injustice. [An appellate court should] reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State." Id. A new trial will only be ordered if the verdict conflicts with the overwhelming weight of the evidence.
¶ 27. Both defendants alleged that Buckley was the aggressor. Other testimony was to the contrary and suggested that Buckley was savagely beaten. The jury is the finder of fact and the "credibility of the witnesses is one to be resolved by the jury." White v. State, 732 So.2d 961, 966 (¶ 22) (Miss.1999). The jury did not accept McLemore's or Watts' version. We find no injustice.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF FRANKLIN COUNTY OF CONVICTION OF GREG WATTS FOR AGGRAVATED ASSAULT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFTER SERVING SIX MONTHS OF SAID SENTENCE IN THE FRANKLIN COUNTY JAIL, THE BALANCE OF FOUR AND ONE HALF YEARS SUSPENDED, WITH FOUR AND ONE-HALF YEARS POST-RELEASE SUPERVISION IS HEREBY AFFIRMED.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF FRANKLIN COUNTY OF CONVICTION OF CARLA L. MCLEMORE FOR AGGRAVATED ASSAULT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED AND FIVE YEARS PROBATION IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] This opinion is substituted for the one originally released. The motion for rehearing is denied.