JOHNSON *v.* STATE.

Apr. 7, 1952.

No. 38402 (58 So. (2d) 6)

**Lomax Lamb, Jr.,** for appellant.

J. T. Patterson, Assistant Attorney General, for appellee.

### Roberds, J.

Appellant was convicted of the rape of Lucile Young and sentenced to the state penitentiary for life. On this appeal he urges that the verdict was against the great weight of the evidence and that his motion to quash the indictment should have been sustained.

After careful and thorough study of the record we have concluded the first contention is well taken. We will deal with that question now.

Both the accused and the prosecutrix are members of the Negro race. Appellant appears to be between twenty and thirty years of age. His exact age is not disclosed by the record but the deputy sheriff, as a witness on the stand, referred to him as a "boy". The prosecutrix is sixty, or more, years of age. Both were married. Her story of what happened is, in substance, this: She and defendant did not live far apart. About 11 o'clock in the morning she was hoeing cotton within a hundred yards of her residence. She was alone. Some one suddenly appeared and spoke to her. His face was bleached with some white substance. He had a twenty-two rifle. He forced her to go to a nearby bayou and there he had sex relations with her twice. She made no resistance, or outcry, because he had threatened her with bodily harm and she was afraid. Her attacker said he was an escaped convict. As to the identity of her attacker she said she recognized the man as appellant when he came close to her, even though his face was covered with the white substance. However, she further said that when he walked up to her "* * * he says to me 'you don't know who I am; you haven't heard of me? I said, "No, I don't know nothing about you." Asked why she said that, she replied, "because he would have killed me". Again, she testified, "I knowed him all the time but I didn't want him to know I knowed him". She then said she knew the identity, but not the name, of her attacker, although,

as stated, their homes appear to have been only a short distance apart.

After the attack she went to her home; prepared and ate her dinner. She then testified that about 1:30 o'clock this same person came by her home as he went fishing. He had his fishing pole. She called him into her house. This is her account of what then happened: "I told him 'put your fishing poles around there with mine'. He went around the house and I grabbed my shoes—I already had my hat on. So we walked on out, and when we got out to the front where the people could see us, I said, 'do you know why I wanted you to come back out here with me'. He said, 'No.' I said, 'one of those convicts you were telling me about today came out in the field where I was'. He said, 'What did he do to you'. I said, 'what he wanted to do'. He said, 'why didn't you tell me that when I first walked up? I would have walked back home and got my gun'. I said, 'You go back and get your gun to keep them from burning up my house'. He walked off fast and went and got his gun. After he came back with the gun there is a house between me and where I lived and I couldn't see him any more. After he said he would get his gun, I said, 'I am going to call the law'. I saw him with the gun in his hand going on.'' She said that when appellant came by he had changed his clothes and had "cleaned himself up."

She then went to the Bel-Mar Tractor Company place of business, apparently not a far distance, and reported she had been attacked. An employee of that concern called the sheriff. Mr. Lee Turner, deputy sheriff, responded to the call; went to the Tractor Company place of business, and Lucile was there. Mr. Turner was asked, "Did she state to you what had occurred?" and he replied, "Yes, sir", without giving the details of the conversation. Turner and the sheriff went to the home of appellant and arrested him. He denied all knowledge of the crime; said he was in Greenwood, Mississippi, where his wife was ill, and had gotten back home around 12 o'clock.

Mr. Turner also said he and the sheriff, who was his brother, first went to another house some three hundred yards from appellant's home, and there they saw boot tracks which lead to the home of appellant. They arrested appellant at his home without a warrant and carried him to jail. Lucile was at the jail and said that appellant, when she was attacked, was wearing light blue underwear. The officers had accused display his underwear and that was the kind he was wearing.

Timothy Johnson, appellant, testified he lived a short distance from Lucile Young; that on that morning he had been to see his wife, who was ill at Greenwood; that he got back home about noon; that he was gigging frogs, his clothes had gotten wet and he had removed them; that the officers found in his home a wet pair of pants, a twenty-two rifle, a bottle of white shoe polish, and a striped coat; that when he saw the officers approaching he placed the wet pants under a mattress. Lucile had said her attacker was wearing wet pants. He denied any knowledge of the alleged crime. He also said that twice before that Lucile had voluntarily had sexual relations with him.

Mr. Ed Meeks testified he owned the farm on which appellant lived; that Lucile told him she had been attacked but that she did not know who had done it. He testified she said, ''She never had seen him—didn't know him—didn't know his name, or anything''. He also said that about ten days before this event is supposed to have occurred he saw Timothy and Lucile together near the bayou under circumstances leading him to believe it was a clandestine meeting. Here the defense rested.

Lucile Young, in rebuttal denied she had voluntarily engaged in sexual relations with the defendant. That was the testimony.

 While a conviction of rape may rest upon the uncorroborated testimony of the person alleged to have been raped, McLaurin v. State, 129 Miss. 362, 92 So. 289; Fairly v. State, 152 Miss. 656, 120 So. 747; Sanders

v. State, 150 Miss. 296, 116 So. 433; Richardson v. State, 196 Miss. 560, 17 So. (2d) 799; Upton v. State, 192 Miss. 339, 6 So. (2d) 129; Rogers v. State, 204 Miss. 891, 36 So. (2d) 155, the testimony of such person should be scrutinized and weighed with care and caution. Richardson v. State, Upton v. State, and Rogers v. State, supra, [196 Miss. 560, 17 So. (2d) 800.] In the Richardson case this Court said, "* * * and where there is much in the facts and circumstances in evidence to discredit her testimony, another jury should be permitted to pass thereon." In Holifield v. State, 132 Miss. 446, 96 So. 306, the Court announced that where an unreasonable story by the prosecutrix is contradicted by creditable witnesses, a new trial should be granted.

It is true the story of Lucile Young is not without corroboration to some extent. The clothes and rifle found in the home of appellant and the underwear worn by him when arrested corresponded generally with the description thereof given by her, yet it is also evident, we think, that the whitewashed-face narrative is rather weird, and her subsequent conduct not that of an outraged person. Preparation and partaking of her noonday meal were more important to her than making a prompt report of the wrong. Some three hours passed before she made the incident known. And her interruption of the fishing expedition of appellant, some three hours after the occurrence is supposed to have happened, and their conversations and actions, are difficult to reconcile with the reactions of a normal woman who has been the victim of the crime here charged. By this we do not mean to pass upon the guilt or innocence of the accused. While we are aware of the gravity of the crime here charged and of the punishment which has been inflicted, we are also mindful of our duty to society. We think the following remarks of the Court in the Upton case, supra, 192 Miss. 339, 6 So. (2d) 130, are applicable here:

"Without setting forth the testimony of the prosecutrix, to do which would serve no necessary purpose,

it will be sufficient to say that it does not appear therefrom that the alleged rape left any marks of violence on her person and her version of how the rape was committed sets forth at least two highly improbable accompaniments of such a crime; in addition her own admitted conduct immediately after the alleged rape suggests that she was not then conscious of such a wrong having been done her and the then conduct attributed by her to the man whom she says had just raped her suggests that he was not then conscious of having so done. Whether a 'reasonable man engaged in a search for truth, uninfluenced by improper motives or consideration (e. g. passion, prejudice, or corruption)' Truckers Exchange Bank v. Conroy, 190 Miss. 242, 199 So. 301, 303; Jakup v. Lewis Grocer Co., 190 Miss. 444, 200 So. 597; could safely accept or act on her evidence is so doubtful that another jury should pass thereon.''

The deputy sheriff told the grand jury that he and the sheriff found the pants, shoe polish, rifle, etc., in the home of appellant when they arrested him. The officers had no warrant to search that house. Defendant made a motion in the lower court to quash the indictment because this testimony was heard by the grand jury. The lower court overruled the motion. In that ruling he was correct. This Court had adopted the rule that ▪▪ ▪ an indictment will not be quashed because the grand jury heard incompetent evidence. Hammond v. State, 74 Miss. 214, 21 So. 149. That is especially true where, as here, the grand jury heard other and competent evidence. The prosecutrix testified before the grand jury. The paramount and moving consideration behind the holding and action of this Court in State v. Milam, 210 Miss. 13, 48 So. (2d) 594, 49 So. (2d) 806, relied upon by appellant, was the enforced confession of the accused before the grand jury. That is not the question here.

Reversed and remanded.

**Alexander, Kyle, Holmes** and **Ethridge, JJ.,** concur.