839 So.2d 553 (2002)
Jeff WIMBERLY a/k/a Jeffery W. Wimberly a/k/a Jeffery Wayne Wimberly, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00587-COA.
Court of Appeals of Mississippi.
December 17, 2002.
Rehearing Denied March 4, 2003.
*554 Stephen P. Livingston, New Albany, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
IRVING, J., for the court.
¶ 1. Jeff W. Wimberly appeals from a conviction of attempted robbery with a deadly weapon, rendered in the Circuit Court of Union County, Mississippi and raises five issues which we quote verbatim:
1. The court was in error when it allowed the Defendant's oral and written confessions to be introduced into evidence, since these confessions were not voluntarily given.
2. It was error on the court's part not to grant a JNOV or direct a verdict based on the lack of evidence presented by the prosecution and their failure to prove an attempted robbery, due to the fact, there was no proof other than the confession.
3. It was error on the court's part to refuse Defendant's jury instruction number D-17 concerning the crime of robbery.
4. It was error on the court's part to allow physical evidence to be introduced since this physical evidence had not been disclosed to the Defendant pursuant to the Defendant's discovery request.
5. It was error on the court's part to allow the oral confession of the Defendant into evidence since it was not disclosed to the Defendant pursuant to the Defendant's discovery request.
¶ 2. We find these issues lack merit; therefore, we affirm.

*555 FACTS
¶ 3. Jeff W. Wimberly was charged and found guilty of attempted robbery with a deadly weapon. On August 12, 1999, between 10:30 and 11:00 p.m., two men entered the residence of the Catlin family in New Albany, Mississippi. The men intended to steal marijuana from Jason Catlin,[1] one of the Catlin children. On the night in question, Mr. and Mrs. Catlin and their four children: Jennifer, age twenty, Jason, nineteen, Jonathan, seventeen, and Jeffrey, sixteen, were at home.
¶ 4. Jason, Jonathan and Jeffrey were in their room in the back of the house when they noticed three shadows walking by the window. As a result, Jason went into the living room and opened the door while his sister Jennifer was sitting in the living room. As Jason opened the door, two white males and one black male stood in the door. The black male hit Jason in the mouth as the other men watched. The intruders wore blue bandannas which extended from underneath their eyes to their chin. Jason's attacker entered the house with a knife and continued to attack Jason as the victim screamed. Meanwhile, Jonathan came into the living room with a .12 gauge shotgun and shot Jason's attacker in the back.
¶ 5. After the attacker was shot, his accomplices left the house. Meanwhile, Officer Tommy Smithey was en route to the Catlin residence. He was told over the police radio that the attacker had been found under a trailer. Officer Smithey went to the scene and discovered Wimberly with a bullet wound in his back. Officer Smithey retrieved a blue bandanna, a knife and a white ball cap from the location. Wimberly was taken to the New Albany Baptist Memorial Hospital. Later that night, Officers Smithey and Mike Pannell arrived at the hospital to question Wimberly. During the officers' visit, Wimberly gave an oral statement.
¶ 6. Five days later, the hospital transferred Wimberly to the North Mississippi Medical Center. On August 17, 1999, Wimberly signed a waiver of rights form and provided Officers Smithey and Benny Kirk with a written confession. The confession described the events which led to the shooting and named the co-attackers.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Admission of Oral and Written Confession
¶ 7. Wimberly contends that his confessions were involuntary because he was on pain medication and in physical pain when he gave his statements to the police. Thus, Wimberly asserts that his equal protection and due process rights were violated by the admission of the involuntary confessions during trial. Wimberly gave two confessions to the police, and both were admitted during trial. The first confession was oral and given on the night in question upon Wimberly's arrival at the hospital. The second confession was a written confession given on August 17, 1999, five days after the incident when Wimberly was released from the hospital. He signed a waiver before giving the written confession. Wimberly avers that the court should have taken into consideration the totality of the circumstances in determining whether his confession was voluntary.
¶ 8. A trial judge's admission of a confession will only be overturned where *556 an incorrect legal standard was applied, manifest error was committed, or the decision was contrary to the overwhelming weight of the evidence. Kircher v. State, 753 So.2d 1017, 1023(¶ 27) (Miss.2000).
¶ 9. The trial judge held a suppression hearing before trial to determine whether Wimberly's confessions were voluntarily, knowingly, and freely given. During this hearing, the judge heard the testimony of Wimberly and Officers Thomas Smithey, Benny Kirk, and Mike Pannell. All officers testified that the statements were given when they were present, were not coerced, and were given freely and voluntarily without an offer of reward. They affirmed that Wimberly was read his rights before each confession. The officers testified that Wimberly stated that he understood the rights that he was waiving on the day the written confession was given. Officers Smithey and Kirk also testified that Wimberly appeared coherent, and his speech was not slurred. Moreover, Officers Smithey and Pannell testified that all details given by Wimberly the night of the incident matched those of the Catlins. Most importantly, Wimberly testified that the date the confession was given was on the same day he was released from the hospital.
¶ 10. We find that the State met its burden of proving its prima facie case and that Wimberly failed to rebut the State's assertions. Therefore, we affirm the trial judge's admission of Wimberly's oral and written confessions.
2. Failure of Court to Grant JNOV or Directed Verdict
¶ 11. Wimberly asserts that the court should have granted his motion for a directed verdict or a JNOV because the State should prove its case with more than his confession. Also, Wimberly avers that the State's witnesses never testified that anything was ever said about robbing or that a robbery transpired. Wimberly concludes that no proof of an attempted robbery existed.
¶ 12. The standard of review concerning a denial of a motion for a JNOV and a directed verdict are the same. Baker v. State, 802 So.2d 77, 81(¶ 13) (Miss.2001). We must consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences which may be reasonably drawn from the evidence and reverse and render where the facts point so overwhelmingly in favor of the appellant that reasonable men could not have found the defendant guilty. Id. However, we must affirm where there is substantial evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. Id.
¶ 13. Considering the evidence in the light most favorable to the State, fairminded jurors could find that Wimberly attacked Jason Catlin with a knife, was shot in the back by Jonathan Catlin, and was found underneath a trailer with a bullet wound to the back as a result of an attempted robbery. During trial, Jennifer, Jonathan, and Jason Catlin testified that a black male attacked Jason and that Jonathan shot Jason's attacker in the back. Officer Tommy Smithey testified that Wimberly was found blocks away from the Catlin residence with a bullet wound in his back. Moreover, Officer Smithey testified that he retrieved a knife, a bandanna and a baseball cap where Wimberly was found. In addition, Officer Smithey explained to the court that Wimberly's oral confession matched that of the Catlins and lead the police to one of the other men involved. This issue is without merit.
*557 3. Jury Instruction D-17
¶ 14. Wimberly asserts that his D-17 instruction was necessary to outline the elements of the crime. The proposed instruction reads, "The Court instructs the jury that in order to be guilty of armed robbery, the victim has to be robbed of something of value. If you find from the evidence that marijuana has no value, then you must find the defendant not guilty."
¶ 15. In reviewing the denial of a jury instruction, we must consider all instructions given in order to determine whether the refusal of the requested instruction was error. See Coleman v. State, 697 So.2d 777, 782 (Miss.1997). However, if the instruction does not fairly represent the law, then the defendant is not entitled to it, and no reversible error will be found. Id. The State asserts that the giving of this instruction would have been a misstatement of the law because the statute does not require that personal property taken have value. We agree with the State.
¶ 16. Wimberly was charged with attempted robbery under Mississippi Code 97-3-79 which provides that:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by exhibition of a deadly weapon shall be guilty of robbery....
Miss.Code Ann. § 97-3-79 (Rev.2000). Consequently, we find no error in the trial court's refusal to grant instruction D-17.
4. Admission of Oral Confession and Physical Evidence
¶ 17. We combine issues four and five for discussion because they allege violations of Wimberly's discovery requests. Wimberly argues that the admission of both the oral confession and the bandanna, knife, t-shirt, and cap was reversible error because Wimberly's counsel only became aware of the existence of this evidence during trial proceedings, rather than prior to those proceedings as per Wimberly's discovery requests.
¶ 18. Wimberly's counsel asserts that the State engaged in a discovery violation when it did not timely disclose the oral confession and that the confession's admission was prejudicial to his client.
¶ 19. "The determination of whether a statement should be suppressed is made by the trial judge sitting without a jury as the finder of fact." Hicks v. State, 812 So.2d 179, 191(¶ 32) (Miss.2002) (citing Herring v. State, 691 So.2d 948, 956 (Miss. 1997)). "Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." Id. (citing Balfour v. State, 598 So.2d 731, 742 (Miss.1992); accord, Palm v. State, 748 So.2d 135, 142(¶ 25) (Miss. 1999)).
¶ 20. Based on the facts of this case, we do not find a discovery violation by the court below. To be sure, we turn our attention to Uniform Circuit and County Court Rule 9.04, subpart I, which provides:
If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
URCCC 9.04(I). The essential purpose of Rule 9.04 is the elimination of trial by *558 ambush and surprise. Robinson v. State, 508 So.2d 1067, 1070 (Miss.1987); see also Frierson v. State, 606 So.2d 604, 607 (Miss. 1992).
¶ 21. Here, the suppression hearing served the purpose of disclosing the existence of Wimberly's oral confession and the State's intended use of it against him. Wimberly objected to the admissibility of the oral confession during the suppression hearing. Wimberly alleged that he became aware of the oral confession the day before trial during the suppression hearing. The circuit court opted to hear testimony regarding both the oral and written confessions before rendering its decision on whether the oral confession was admissible. Wimberly testified himself, and the State presented Officers Smithey, Pannell, and Kirk as witnesses. Each party received the opportunity to examine and cross-examine witnesses. The court heard testimony regarding the surrounding circumstances of both the oral confession given on the night of the incident and the written confession given five days later. After considering all testimony about Wimberly's oral and written confessions, the court explained, "We've heard the testimony as to both of them at the same time, and the Court is of the opinion that both the statements were made voluntarily, knowingly and intelligently, and the Court will allow it."
¶ 22. Although the State failed to submit the oral confession upon Wimberly's discovery request, the admission of the oral confession is not reversible error, as the written confession was essentially the same as the oral confession. The confessions' similarities are adequately supported in the record. Officer Smithey, who was present both during Wimberly's oral and written statements, gave the following testimony regarding Wimberly's oral confession on the night of the incident:
Q: Did you, at some point, take a statement from Mr. Wimberly?
A: Wewe took an oral statement. We went over to the emergency where they were working on Mr. Wimberly....
Q: Did youdid you ask Mr. Wimberly any questions?
A: Yes, sir, we did.
Q: What did you ask him?
A: We asked him who the other people were, and you know, what had happened, and he told myself and the other policeman, and so
Q: Who was the other police officer?
A: That would be Officer Pannell.
That they had bought a dime bag of marijuana earlier there that day or that evening, and Stephen Dukes, one of his friends, was with him. Another subject, he didn't know his last name, but thought that his first name was Marcus, and they had got out and ridden around and said this would be an easy target for them to go back, and I think Stephen Dukes had told them it would be an easy mark or something to that effect. And they went back to rob them of the marijuana or theand money or whatever.
Smithey later testified:
Q: Okay. Did you there, at a later time, take a more formal statement from Mr. Wimberly?
A: Yes, we did....
Q: And what date.... What day is that taken?
A: This was 11:59 a.m. on the 17th of August ...
Q: Now, was [the] statement consistent with what he told you on the night of this incident.
A: Basically, it was the same, yes, sir.
*559 ¶ 23. Officer Pannell, who accompanied Smithey during Wimberly's oral confession on the night of the incident, confirmed the reliability of Wimberly's oral statement:
Q: Did he [Wimberly] have anything to indicate that to you he appeared to indicate that he didn't know what he was talking about?
A: He knew exactly what he was saying because the information he was giving us was truthful and correct in what had happened from the statements of the individuals that were in the house he went into.
Q: What he was telling you was matching up with what they were telling you?
A: Yes, sir.
¶ 24. Officer Benny Kirk, who accompanied Smithey during Wimberly's written confession at the hospital, attested to the credibility of Wimberly's written confession:
Q: Did he [Wimberly] give you a coherent statement?
A: He did.
Q: Those details that are included in that statement, who provide[d] those details?
A: He did.
Q: Were the other details consistent with the details that the victims in this case had given you earlier?
A: Yes, sir.
¶ 25. This Court therefore finds that the trial court properly admitted Wimberly's oral confession during the trial. It is indeed strange that Wimberly would claim surprise or prejudice about the late disclosure of a confession that he surely knew he had given. Surely, he had had ample opportunity to disclose to his attorney that he had given an oral confession to the officers on the day of the incident, thereby giving his attorney plenty of time for preparation of Wimberly's defense in light of the confession. This issue is without merit.
¶ 26. Wimberly also argues that the State's failure to timely disclose certain physical evidence unfairly prejudiced him and should not have been admitted. Wimberly also asserts that the trial court deprived him of the opportunity to examine the evidence, introduced by the State, which had not been previously disclosed to him in discovery.
¶ 27. Wimberly filed a motion for discovery and requested the State to exhibit any physical evidence and photographs relevant to the case which the State intended to offer into evidence during the trial. The State allegedly failed to inform Wimberly that Officer Smithey had recovered and maintained in his possession a knife, shirt, blue bandanna, and cap, all supposedly used during the alleged attempted armed robbery at the Catlin residence. Because the State failed to disclose these items during discovery, Wimberly argues that the lower court's ruling should be reversed.
¶ 28. The State counters that if it did breach the discovery rules that its breach did not warrant a reversal because Wimberly did not request additional relief after being granted a brief recess to review evidence pursuant to Box v. State, 437 So.2d 19 (Miss.1983). The State argues, in the alternative, that if the court did err by admitting the evidence, it was harmless error in light of the overwhelming weight against Wimberly.
¶ 29. Evidentiary rulings are within the broad discretion of the trial court and will not be reversed absent an abuse of discretion. Coleman v. State, 697 So.2d 777, 784 (Miss.1997). Rule 9.04 of the Uniform Circuit and County Court Rules sets forth the appropriate procedure and remedies for the trial court to consider in resolving discovery violations. If during the course *560 of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
URCCC 9.04(I). The purpose of the discovery guidelines and remedies is to avoid an ambush or unfair surprise to either party during the trial. See Frierson v. State, 606 So.2d 604, 607 (Miss.1992).
¶ 30. In the case sub judice, the State attempted to introduce the knife, bandanna, shirt, and cap that Officer Smithey recovered during the course of his investigation. Wimberly's counsel then told the court, "Your Honor, I'm going to have an objection on this, maybe we need to be heard." Outside the presence of the jury, counsel argued before the judge as to whether the physical evidence should be admitted. Wimberly's counsel objected to the State's failure to exhibit any physical evidence that the State intended to use at Wimberly's trial. He further asserted that the admission of such evidence would amount to unfair surprise and therefore prejudice his client. The State admitted that the discovery given to the defendant did not list the physical evidence in question; however, the State urged (1) the discovery had been available in the evidence room for the defendant's inspection before trial, (2) it was the State's policy to offer the entire file and any evidence in the possession of the State to the defendant on discovery, and (3) prior testimony existed about the physical evidence. The State also took the position that Wimberly was aware that the State had this evidence because the evidence was retrieved when Wimberly was found under the trailer.
¶ 31. Following the consultation between the court and counsel, the trial court gave Wimberly's counsel time to examine the evidence. However, after doing so, Wimberly's counsel never requested an additional continuance or mistrial but only reasserted his claims of unfair surprise and prejudice. The judge determined that Wimberly was not surprised because "[E]very witness that has testified, as I recall, testified about a knife. It can't be surprise, and the casesthe Rule talks about unfair surprise and undue prejudice." He consequently overruled Wimberly's objection.
¶ 32. Although this Court finds that the State violated the discovery rules when it did not exhibit the physical evidence upon Wimberly's request, there is no evidence that the discovery violation worked to Wimberly's detriment or prejudiced his case. Wimberly was aware that the crime involved a knife because such was specified in his indictment. In his August 17, 1999 written confession, Wimberly admitted that he entered the Catlin home and got on top of a guy with a knife.
¶ 33. Furthermore, it should be noted, Wimberly did not request a mistrial or an additional continuance after the court granted him an opportunity to examine the *561 physical evidence upon his Rule 9.04 objection. Even if a discovery violation had occurred, Wimberly's failure to request a continuance after reviewing the material would procedurally bar his argument for an inadequate continuance. See URCCC 9.04(I); see also Snelson v. State, 704 So.2d 452, 458(¶ 35) (Miss.1997).
¶ 34. Given the purpose of Rule 9.04 and the minimal significance that the introduction of the weapon had on the case, we find that this assignment of error is without merit.
¶ 35. THE JUDGMENT OF THE UNION COUNTY CIRCUIT COURT OF CONVICTION OF ATTEMPTED ARMED ROBBERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED TO BE SERVED ON POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO UNION COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] During trial, Officer Smithey read Wimberly's confession which stated the purpose for going to the Catlin home.